IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EXPRESS SERVICES, INC., | ) |
| Plaintiff, | ) ) ) 2:23-CV-196-NR ) |
| v. | ) ) ) |
| DBEC WHOLESALE CO., LLC, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM ORDER**

Plaintiff Express Services, Inc. is a staffing company that employs individuals, and then essentially loans them out to other companies. Consistent with this business model, Express entered into a written staffing agreement with Defendant DBEC, in which it agreed to provide its employee (a so-called "Express associate"), Scott Gross, to work for DBEC. Mr. Gross was a driver for DBEC, and in the course of his employment, was involved in a serious car accident. Through the workers' compensation system, Express "and/or" its workers' compensation insurer paid Mr. Gross's medical bills. Express sued DBEC, alleging that DBEC was to blame for the injuries, and invoked the indemnification provision in the staffing agreement to recover the money paid to Mr. Gross.

DBEC has moved to dismiss Express's amended complaint, arguing that Express lacks standing, and that DBEC is immune from liability under Pennsylvania's Workers' Compensation Act. For the reasons that follow, the Court agrees with DBEC; grants the motion; and dismisses the amended complaint with prejudice.

## DISCUSSION & ANALYSIS[1]

**I. Express lacks standing to recover monies paid by its insurer to Mr. Gross.**

The amended complaint doesn't plausibly plead that Express has standing. Standing is a threshold inquiry that must be satisfied for a party to bring a claim. To establish standing under Article III, a party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he party invoking federal jurisdiction[] bears the burden of establishing these elements." *Id.* An "injury in fact" is an invasion of a legally protected interest that is "concrete and particularized . . . actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Express has not alleged a plausible concrete harm. That is, Express alleges that it "and/or" its insurance carrier has incurred $606,631 in medical bills, $165,808 in workers' compensation indemnity payments, and $61,692 in expenses, attorney's fees, and costs. ECF 7 at ¶ 21-23. Based on this "and/or" allegation, it is not clear and therefore not plausible whether Express is attempting to recover money paid by Express to Mr. Gross or money paid by Express's workers' comp insurance carrier to Mr. Gross. If Express is attempting to recover money paid by its insurance carrier to Mr. Gross, it lacks standing to do so. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

interests, and cannot rest a claim to relief on the legal rights or interests of third parties." (citation omitted)).[2]

Ordinarily, a pleading defect like this would result in dismissal without prejudice, and with the Court granting leave to amend. However, amendment would be futile here because even if Express itself suffered any losses for which it now seeks damages, DBEC is immune from suit. More on that below.[3]

## II. DBEC is immune under the borrowed servant doctrine, and the indemnification provision doesn't waive its immunity.

Under the Pennsylvania Workers' Compensation Act, an employer enjoys immunity from suit by its employee for any losses suffered by that employee in the course of his employment. 77 Pa. Stat. Ann. § 481; *see also Shaw v. Thrift Drug, Inc.*, No. 98-5170, 1999 WL 994020, at *2 (E.D. Pa. Nov. 2, 1999). The "borrowed servant doctrine" extends this immunity to not only the "actual" employer, but also to a "statutory" employer—*i.e.*, the employer who obtains the employee on loan. *Ochs v. Reading Hosp.*, 647 F. App'x 126, 128 (3d Cir. 2016) ("[PWCA] immunity from suit extends from the direct employer to another entity that has 'borrowed' the employee if the latter exercises sufficient control over the employee.").

"Under this borrowed servant doctrine, the crucial test in determining whether a servant furnished by one person to another becomes the employee of the

---

[2] Express's only real response to this is that the collateral source rule prevents the Court from considering whether Express obtained insurance. ECF 12, p. 3. But that rule doesn't apply; the collateral source rule applies where an insurer pays money to the claimant (here, Express). *See Smith v. United States*, 587 F.2d 1013, 1015 (3d Cir. 1978) (stating that "for example, an accident victim may recover medical expenses from a tortfeasor even though the victim's own insurance policy covers such costs."). Express never received any payments from the workers' comp insurer; Mr. Gross did.

[3] Additionally, DBEC argues that any losses Express may have incurred itself in connection with the Gross claim falls below the $75,000 amount-in-controversy threshold. Express doesn't dispute that in its briefs.

person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it." *Solomon v. FedEx Supply Chain, Inc.*, 433 F. Supp. 3d 696, 700 (M.D. Pa. 2020) (cleaned up).

Here, there is no doubt that DBEC qualifies as a statutory employer, given the level of control it exercised over Mr. Gross. Specifically, the staffing agreement between Express and DBEC states that DBEC "will supervise, direct, and control the work performed by Express associates, and assume responsibility for all work product and operational results[.]" ECF 7-1, ¶ 9. Express further alleges in the amended complaint that "pursuant to the terms of the Staffing Agreement" Mr. Gross worked for DBEC under the supervision of the owner of DBEC. ECF 7, ¶ 10. Accepting all of this as true, the Court concludes that DBEC qualifies as a statutory employer under the borrowed servant doctrine. *See Solomon*, 433 F. Supp. 3d at 700 ("[W]here the material facts are not in dispute, the issue of whether an employer is a statutory employer under the borrowed servant doctrine and the PWCA is a question of law[.]"). And because the PWCA "provides an exclusive remedy for the employer to recover expenditures incurred as the result of an employee's injury[,]" DBEC is immune from suit. *Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 104 (3d Cir. 1984) (affirming grant of summary judgment and holding that employer could not recover increased workers' compensation insurance premiums).

There is, though, an exception to this immunity: contractual indemnification. If DBEC specifically and expressly agreed to indemnify Express for injuries sustained by the loaned employees and that were caused by its own negligence, then it loses its immunity. *See Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 307 (Pa. Super. Ct. 1993) ("A court will not materially rewrite the contract of the parties and insert terms which are not there in the absence of an explicit expression to waive the protection afforded by the [Workers'] Compensation Act."). That exception doesn't apply here

because the language of the parties' indemnification clause isn't specific enough to pass the rather heightened standard.

Under Pennsylvania law, an indemnification clause in this context must include language that expressly states than an employer intended to forego its statutory protection from workers' compensation claims. *Id.* ("Case law has established that the indemnity provision in the [Worker's] Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient." (citation omitted)). What this means is that the contract must state that it will indemnify for the statutory employer's own negligence, for losses sustained by the borrowed employee. *Jones v. Swepi L.P.*, No. 19-50, 2020 WL 241009, at *4 (W.D. Pa. Jan. 16, 2020) (Hornak, C. J.); *see also Bookard v. Estee Lauder Companies, Inc.*, 443 F. Supp. 3d 561, 569 (E.D. Pa. 2020) ("The employer's agreement to indemnify the third party must be made to apply specifically to claims by its employees." (cleaned up)); *Muth v. Rondel at Atlas Terrace, LLC*, No. 08-0476, 2009 WL 50173, at *3 (E.D. Pa. Jan. 8, 2009) ("Pennsylvania caselaw makes clear that, for an indemnification clause to require an employer to indemnify claims brought by the employer's own employees, the clause must either explicitly state that it covers such claims, or state that the employer's indemnity obligations are not limited by the protections of the Workers' Compensation Act."). But "general contractual language from an employer agreeing to indemnify 'any or all' claims or claims of 'any nature whatsoever' does not cut it under the *Bester* test." *Jones*, 2020 WL 241009, at *4 (citation omitted).

There are two indemnification clauses in the staffing agreement:

Paragraph 8 states:

> "Express will only provide associates for positions operating a motor vehicle, forklift, or other motorized mobile equipment if notified in writing prior to an assignment. We must know in advance, so We can assign

> associates who are qualified to meet your specifications. During an assignment, if Our associate operates a motor vehicle, forklift, or any other motorized mobile equipment, you agree to maintain liability insurance for any such motorized equipment and to defend, indemnify, and hold Us harmless for bodily injury, property damage, fire, theft, collision, public liability claims, or other Loss, regardless of fault." ECF 7-1, ¶ 8.

Paragraph 9 states:

> "You will supervise, direct, and control the work performed by Express associates, and assume responsibility for all work product and operational results, including personal injury to a third party or your agents or employees, losses or damage to property or data in the care, custody, or control of an Express associate. You agree to defend, indemnify, and hold Us harmless from any Loss, including costs and attorney fees, (collectively "Loss" or "Losses") that may be caused by breach of this Agreement and/or by your negligence or misconduct, and agree on behalf of your insurer(s) to waive all rights of recovery (subrogation) against Us." *Id.*, ¶ 9.

Neither of these indemnification provisions is sufficient to waive immunity under the Workers' Compensation Act because neither has the requisite specificity. *Bookard*, 443 F. Supp. 3d at 574.

With respect to Paragraph 8, that provision appears to contemplate indemnity for third-party injuries in connection with a motor vehicle accident. Even if that provision went further, it is too generalized to satisfy the heightened standard, as it doesn't refer to indemnity for losses to employees.

Paragraph 9 is a little closer of a call in that it does reference indemnity for injury to "your agents and employees." But, in context, "employee" doesn't mean Mr. Gross and any other borrowed servant. That is, throughout the staffing agreement, the contract refers to the loaned employees as "Express associates." But Paragraph 9 doesn't expressly state that DBEC will provide indemnity for injuries by "Express associates." Instead, the use of "agents and employees" in Paragraph 9 appears to

refer to DBEC's own employees, not the borrowed servants, which the contract consistently refers to "Express associates." At a minimum, the Court must strictly construe this provision; and Paragraph 9 isn't clear enough to waive immunity.[4]

In sum, DBEC is entitled to workers' compensation immunity, and the indemnification provisions in the staffing agreement do not clearly evidence an intent to waive that immunity.

\* \* \*

Therefore, after careful consideration, it is hereby **ORDERED** that DBEC's motion to dismiss (ECF 8) is **GRANTED**. The amended complaint (ECF 7) is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall mark this case as **CLOSED**.

Date: October 30, 2023

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[4] Notably, Paragraph 5 of the staffing agreement required Express (not DBEC) to provide workers' compensation insurance to cover "claims by Express associates against Express." ECF 7-1, ¶ 5. It would make little sense for the agreement to require such insurance, but then shift the liability to the contracting party without the insurance. This is further support that the parties never clearly intended for DBEC to waive its workers' compensation immunity.